IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LARRAN L.,<br>Plaintiff,<br>v.<br>FRANK BISIGNANO, Commissioner of Social Security,<br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 4:25-cv-00129-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff's appeal from the decision of the Social Security Administration denying his application for disability insurance benefits and supplemental security benefits for the time period of October 11, 2012, to March 3, 2022.[1] The Court reverses the administrative ruling and remands for further proceedings.

## I. STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether the "findings are supported by substantial evidence and whether the correct legal standards were applied."[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If

[1] Docket No. 10, filed February 6, 2026.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not reweigh the evidence or substitute its judgment for that of the Commissioner.[7] In other words, a court is to "review only the *sufficiency* of the evidence, not its weight."[8] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence," and the Court "may not 'displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'"[9]

## II. BACKGROUND

### A. PROCEDURAL HISTORY

On December 19, 2012, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability beginning on October 11, 2012.[10] The claims were denied initially and on reconsideration.[11] Plaintiff then requested a hearing before an ALJ,[12]

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007).

[9] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal alterations omitted).

[10] R. at 175–89.

[11] *Id*. at 80–83.

[12] *Id*. at 123–24.

which was held on December 6, 2014.[13] On February 4, 2015, the ALJ found that Plaintiff was not disabled.[14] The Appeals Council denied review on June 3, 2016.[15]

Plaintiff sought review in this Court and the agency voluntarily remanded the case.[16] A remand hearing was held on November 15, 2017.[17] The ALJ again issued an unfavorable decision on June 18, 2018.[18] The Appeals Council denied review on August 14, 2019.[19]

Plaintiff again brought suit in this Court, where it was again voluntarily remanded.[20] The Appeals Council remanded the case to an ALJ to resolve the failure to address or weigh treating source opinions from Michael Green, M.D., and DeAnne Staheli, APRN, by the previous ALJ.[21] A second remand hearing was held on August 3, 2022.[22] The ALJ found Plaintiff not disabled on August 26, 2022.[23] The Appeals Council denied review on March 30, 2023,[24] and Plaintiff appealed the decision to the United States District Court where it was again remanded for further consideration.[25]

---

[13] *Id.* at 31–59.

[14] *Id.* at 12–30.

[15] *Id.* at 1–6.

[16] *Id.* at 894–98.

[17] *Id.* at 899–917.

[18] *Id.* at 865–85.

[19] *Id.* at 856–61.

[20] *Id.* at 1156–62.

[21] *Id.* at 1171–72.

[22] *Id.* at 1095–1118.

[23] *Id.* at 1067–94.

[24] *Id.* at 1060–66.

[25] *Id.* at 1618–31.

A third remand hearing was held before an ALJ on February 20, 2025,[26] after which the ALJ issued his decision finding Plaintiff not disabled on March 21, 2025.[27] The Appeals Council declined to review Plaintiff's request for review on September 29, 2025,[28] making the ALJ's decision the final decision of the Commissioner.[29]

On November 18, 2025, Plaintiff again brought suit in this Court.[30] On that same date, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[31] The Commissioner filed the administrative record on January 7, 2026.[32]

Plaintiff filed his Opening Brief on February 6, 2026.[33] The Commissioner's Answer Brief was filed on May 1, 2026.[34] Plaintiff filed his Reply Brief on May 15, 2026.[35]

B. MEDICAL RECORD EVIDENCE

Plaintiff sought benefits based on mental illness.[36] Plaintiff has a history of psychosis and paranoia and has self-medicated with marijuana since the age of 13.[37] Plaintiff also has physical

---

[26] *Id.* at 1548–63.

[27] *Id.* at 1507–47

[28] *Id.* at 1500–06.

[29] 20 C.F.R. §§ 416.1481, 422.210(a).

[30] Docket No. 1.

[31] Docket No. 5.

[32] Docket No. 9.

[33] Docket No. 10.

[34] Docket No. 16.

[35] Docket No. 17.

[36] R. at 205.

[37] *Id.* at 260.

impairments as a result of a motor vehicle accident.[38] In September 2012, Plaintiff was involuntarily admitted to the psychiatric unit after an incident with the police.[39] On October 11, 2012, Plaintiff was discharged from the psychiatric unit and was involuntarily committed for a six-month period.[40]

In April 2013, Plaintiff's claim was reviewed by state agency psychologist Joan Zone, Ph.D.[41] Dr. Zone opined that Plaintiff had moderate limitations in certain areas related to sustaining concentration and persistence, and adaptation limitations.[42] Dr. Zone opined that Plaintiff would not be capable of work that was complex or stressful,[43] and suggested that Plaintiff could perform unskilled work in a low stress environment.[44] On reconsideration, Dr. Charles Raps agreed with Dr. Zone's assessment.[45]

Plaintiff began treatment with Stephen A. Welsh, M.D., in August 2013. Treatment notes from Dr. Welsh, among other providers, indicate that Plaintiff's mental health conditions were well-controlled with medications.[46] At other times, Plaintiff reported and Dr. Welsh noted those medications also resulted in cognitive slowing, resulting in Plaintiff reportedly having difficulty

---

[38] *Id.* at 692.

[39] *Id.* at 260.

[40] *Id.* at 270–71.

[41] *Id.* at 60–69.

[42] *Id.* at 66–67.

[43] *Id.* at 63–64.

[44] *Id.* at 68.

[45] *Id.* at 84–94.

[46] *Id.* at 809, 823, 829, 1042–43, 1045–46, 1048, 1338, 1346, 1352, 1355, 1359, 1371, 1381, 1397, 1435, 1455, 1461, 1463, 1469. Plaintiff apparently started Respiradone and Tegretol sometime after he was admitted to the State hospital. *See id.* at 562.

following instructions and staying on task.[47] Other treatment providers also noted cognitive slowing due to his medication regimen.[48]

On October 29, 2014, prior to the initial hearing, Dr. Welsh wrote a letter stating that Plaintiff's schizoaffective disorder was stable on his current medication regimen, but that he would have difficulty holding a job because his thinking processes and executive functioning were severely affected by his condition and medications.[49] Dr. Welsh also noted that as he was a family doctor, he had "not felt qualified to fill" out a mental residual functional capacity statement for Plaintiff, and had been working to have Plaintiff seen by a psychologist or neuropsychiatrist for psychological testing utilizing their particular expertise.[50] At the initial hearing before the ALJ, Plaintiff testified that he filed for disability after his hospitalization when he realized his medications were causing cognitive difficulties.[51]

After his claim was initially denied by the ALJ, Plaintiff was evaluated by James M. Ottesen, Ph.D., in March 2015.[52] Dr. Ottesen noted that Plaintiff's "form of thought was linear and his speech quantity, both spontaneous and in response to questions was normal," and that "[s]peech quality was normal."[53] Dr. Ottesen additionally noted that Plaintiff's "[l]evel of responsiveness did show obvious effects of medications as he was quite slow in his responses (i.e., which would

---

[47] *Id.* at 809, 811, 815, 827, 835, 837, 1029, 1037, 1053, 1058, 1376, 1388, 1390, 1393, 1402, 1442.

[48] *Id.* at 690, 1440, 1442.

[49] *Id.* at 827.

[50] *Id.*

[51] *Id.* at 41–42.

[52] *Id.* at 832–37.

[53] *Id.* at 835.

be expected for someone taking the strong psychopharmacological medications [Plaintiff] is taking)."[54] He further opined that Plaintiff's schizoaffective disorder had reportedly stabilized on medications.[55] Dr. Ottesen noted that if Plaintiff did not take his medications, his delusions and hallucinations would make him dangerous to himself and others.[56] On the other hand, Dr. Otteson explained that if Plaintiff does take his medications, Plaintiff "cannot think quickly enough, remember well enough, or perform fast enough to be a good employee."[57]

After the initial psychological evaluation, Dr. Ottesen completed a Psychiatric Review Technique and a Mental Residual Functional Capacity Form over the course of the next two days.[58] Dr. Ottesen checked boxes indicating Plaintiff had extreme limitations in maintaining social functioning; maintaining concentration, persistence, or pace; and would have four or more episodes of decompensation.[59] Dr. Ottesen also opined that Plaintiff would be off-task 15% or more of an 8-hour workday in a number of areas.[60]

In July 2017, Dr. Welsh apparently completed a Medicaid disability form, therein opining that while Plaintiff's intellectual function was decreased, he was still able to "do basic things like yard work and cleaning around the house, but would have a hard time doing things that would require greater intellectual functioning than that."[61]

---

[54] *Id.*

[55] *Id.* at 837.

[56] *Id.*

[57] *Id.*

[58] *Id.* at 839–55.

[59] *Id.* at 849.

[60] *Id.* at 854–55.

[61] *Id.* at 1393.

In September 2017, prior to the first remand hearing, Dr. Welsh completed a Treating Source Statement of Physical Limitations form ("Form I") and a Depressive, Bipolar, and Related Disorders Treating Physician Data Sheet ("Form II").[62] Dr. Welsh noted that Plaintiff had difficulty concentrating and thinking, stating that he "[h]as trouble following through on tasks" and "needs to have simple instructions repeated to him multiple times."[63] Dr. Welsh also indicated that Plaintiff was "very easily distracted."[64] Dr. Welsh noted that Plaintiff had a number of moderate or marked restrictions in his ability to perform work-related functions.[65] Dr. Welsh opined that Plaintiff would be off-task 20% or more of the time, would be absent 4 or more days per month, and would be less than 50% as efficient as the average worker.[66]

At the first remand hearing, Plaintiff again testified that his medications made him tired and slow.[67] He further stated that his medications made it difficult to understand directions and that he needed to be reminded of what he needed to do.[68] At the second remand hearing, Plaintiff reported that not much had changed other than his low back had healed some.[69] At the third remand hearing, Plaintiff reiterated that when he was on medication during the period of time in question,

[62] *Id.* at 1020–27.

[63] *Id.* at 1022.

[64] *Id.* at 1023.

[65] *Id.* at 1024–26.

[66] *Id.* at 1027.

[67] *Id.* at 906–07.

[68] *Id.* at 907.

[69] *Id.* at 1111.

the medication made it not "feasible [for him] to work with people" and he was "very angry tempered."[70]

On May 31, 2019, Dr. Welsh provided another statement, explaining that despite compliance with medication, Plaintiff was beginning to display more symptoms of paranoia.[71] Dr. Welsh stated that Plaintiff was unable to obtain a driver's license and, with his mental limitations, Plaintiff would have a very difficult time showing up to work consistently.[72] Based upon a visit in January 2020, Dr. Welsh provided another statement indicating that Plaintiff had "been fairly stable during the time I have cared for him," and that Plaintiff did have "mental slowing from his meds, but is otherwise controlled."[73]

C. THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that, during the closed period, there had been a continuous 12-month period where Plaintiff had not engaged in substantial gainful activity.[74] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: schizophrenia and other,

[70] *Id.* at 1555.

[71] *Id.* at 1338.

[72] *Id.* Notably, the ALJ's decision mischaracterizes Dr. Welsh's statements here. The ALJ said, "the primary reason Dr. Welsh suggests that the claimant is unable to work appeared to be the claimant's lack of transportation more so that [sic] any mental or physical limitation." *Id.* at 1527. Dr. Welsh said "[t]he patient is unable to hold a driver's license and there is no public transportation from his home in Virgin, Utah, to anywhere he would be able to hold a job. With his mental limitations he would likely have a very difficult time showing up consistently to work." *Id.* at 1338.

[73] *Id.* at 1365.

[74] *Id.* at 1513.

anxiety disorders, affective disorders, and spinal disorder.[75] At step three, the ALJ determined that Plaintiff did not meet or equal a listed impairment.[76] Then the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain limitations.[77] At step four, the ALJ concluded that Plaintiff had no past relevant work.[78] At step five, the ALJ found that there were jobs that exist in significant numbers that Plaintiff could perform and, therefore, he was not disabled.[79]

## III. DISCUSSION

Plaintiff's claims for disability were filed in 2012. "For claims filed before March 27, 2017, the weight given to a medical opinion depends, in part, on its source."[80] Regardless of source, an ALJ must evaluate every medical opinion,[81] and must "discuss the weight [the ALJ] assigns to such opinions."[82] In reviewing the opinions of treating sources in particular, the ALJ must engage in a sequential analysis.[83] First, the ALJ must consider whether the opinion is "well-supported by medically acceptable clinical and laboratory techniques."[84] If the ALJ finds that the opinion is well-supported by these modalities, then she must confirm that the opinion is consistent with other

---

[75] *Id.*

[76] *Id.* at 1514.

[77] *Id.* at 1516.

[78] *Id.* at 1536.

[79] *Id.* at 1537–38.

[80] *Hobbs v. O'Malley*, No. 22-cv-239-DES, 2024 WL 4346718, *3 (E.D. Okla. Sept. 30, 2024) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

[81] 20 C.F.R. § 404.1527(c).

[82] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

[83] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

[84] *Id.* (internal quotation marks and citation omitted).

substantial evidence in the record.[85] If these conditions are not met, the treating physician's opinion is not entitled to controlling weight.[86]

This does not end the analysis, however. Even if a physician's opinion is not entitled to controlling weight, the opinion is not rejected outright but is entitled to deference and must still be evaluated "using all the factors provided in 20 C.F.R. § 404.1527 and 416.927."[87] Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[88]

After considering these factors, the ALJ must give good reasons for the weight she ultimately assigns the opinion.[89] If the ALJ rejects the opinion completely, she must give specific, legitimate reasons for doing so.[90] "Though the ALJ need not explicitly discuss all of the relevant factors, her findings 'must be sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reasons for that weight.'"[91] "The goal is to

---

[85] *Id.*

[86] *Id.*

[87] *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4).

[88] *Id.* at 1301 (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

[89] *Id.*

[90] *Id.*

[91] *Guice v. Comm'r, SSA*, 785 F. App'x 565, 569 (10th Cir. Sept. 5, 2019) (quoting *Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011)).

facilitate meaningful review."[92] With this applicable analytical framework explained, the Court now turns to Plaintiff's claims on appeal.

In his brief, Plaintiff argues that the ALJ erred in her evaluations of the medical opinion evidence from Plaintiff's providers even after receiving instruction from previous remands and this Court to consider certain medical opinion evidence.[93] First, Plaintiff argues that because the ALJ did not afford the treating source opinion controlling weight, it was incumbent upon the ALJ to weigh all opinions in the record, specifically referring to the Doctors' Volunteer Clinic notes, and especially so because the Appeals Council had previously ordered that the ALJ consider them.[94] Plaintiff next asserts that the ALJ erred in concluding Dr. Welsh's opinions were entitled to little to no weight on the grounds that Dr. Welsh was a general practitioner but not a specialist, and his opinions were inconsistent with other medical evidence.[95] Finally, Plaintiff argues the ALJ's treatment of Dr. Otteson's opinion was in error, namely the ALJ's conclusion the opinion was entitled to no weight because he only saw Plaintiff one time. Each argument is addressed in turn.

A. DOCTORS' VOLUNTEER CLINIC NOTES

As to the records from the Doctors' Volunteer Clinic, specifically from DeAnne Staheli, APRN, and Michael Green, MD, Plaintiff argues that the ALJ should have evaluated their

---

[92] *Marshall v. Astrue*, 290 F. App'x 90, 92 (10th Cir. 2008); *see also Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (reversing where the ALJ's factual findings were unsupported by substantial evidence and "insufficiently specific to allow meaningful review").

[93] Docket No. 10, at 3, 12.

[94] *Id.* at 14; R. at 1171.

[95] Docket No. 10, at 15.

opinions, especially as previous failure to consider those notes had led to a prior remand.[96] Plaintiff argues failure to do so here also requires another remand.[97]

The records from the Doctors' Volunteer Clinic included progress notes and a work note regarding Plaintiff's lower back and left leg pain from the time span of February 2017 to September 2017.[98] The ALJ summarized each progress note from the providers,[99] which included recitations of Plaintiff's low back pain and left leg pain, an MRI report showing "new large left central disc extrusion at L4-L5 which severely narrowed the canal and left lateral recess,"[100] and advice to Plaintiff to "avoid high impact activities – running, jumping, etc. also avoid bending, twisting, heavy lifting, surgery recommended."[101] After her summary, the ALJ simply noted that there was no additional evidence of any follow-up treatment with these providers after the September 2017 record.[102] There was no further discussion from the ALJ as to these notes.

"It is the ALJ's duty to give consideration to all the medical opinions in the record. [She] must also discuss the weight [she] assigns to such opinions."[103] However, "an ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."[104]

---

[96] Docket No. 10, at 14.

[97] *Id.*

[98] R. at 995–1004.

[99] *Id.* at 1523–24.

[100] *Id.* at 1004.

[101] *Id.* at 996.

[102] *Id.* at 1524.

[103] *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotation marks omitted).

[104] *Id.* at 578–79.

While the ALJ recited what was included in the opinions from these providers,[105] she did not communicate whether she afforded them any weight or, if she disregarded them, for what reason she did so. However, the ALJ determined that Plaintiff had the RFC to perform "light work," which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing" and an individual must have "the ability to do substantially all of these activities."[106] None of the medical notes from Dr. Green or APRN Staheli, or any other provider from Doctors' Volunteer clinic, indicated that Plaintiff was limited to anything beyond what is contemplated by "light work." Therefore, while the ALJ did err in failing to consider these opinions beyond her summation, the error was, in this case, harmless because the specific work-related limitation was not inconsistent with the ALJ's RFC.[107] However, because this case will be returned on remand, the next ALJ should ensure they not only summarize, but consider, weigh, and discuss the medical opinions in the record and provide reasoning behind the weight afforded the opinions.

B. DR. WELSH

Dr. Welsh provided four different statements between October 2014 and January 2020. As for all of Dr. Welsh's opinions, the ALJ concluded they were not to be afforded controlling

---

[105] R. at 1523–24.

[106] 20 C.F.R. § 404.1567(b).

[107] *See Keyes-Zachary*, 695 F.3d at 1165 (finding no harmful error when an ALJ failed to specify a weight given to an opinion in a mental status form when the limitations assigned by the providers were not inconsistent with limitations in the ALJ's RFC).

weight.[108] The ALJ's conclusion primarily rests on Dr. Welsh's acknowledgement that he was not a specialist and felt unqualified to offer an opinion as to Plaintiff's mental function, and because Dr. Welsh's opinions were allegedly inconsistent with examination and progress notes.[109] Plaintiff asserts the ALJ incorrectly weighed Dr. Welsh's opinions, specifically out of line with the treating physician's rule.[110]

"A physician's opinion is deemed entitled to special weight as that of a 'treating source' when he has seen the claimant 'a number of times and long enough to have obtained a longitudinal picture of [the claimant's] impairment,' taking into consideration 'the treatment the source has provided' and 'the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.'"[111] However, an ALJ "may discount a treating physician's opinion because it is inconsistent with the weight of the evidence[.]"[112]

From the outset, the ALJ incorrectly conflates the management of Plaintiff's schizoaffective disorder and the side effects of the medication that were managing the disorder. But these are not mutually exclusive phenomena. Throughout, the ALJ effectively concludes that because the symptoms of the schizoaffective disorder are stabilized, it is of little consequence that Plaintiff's records often reflect Plaintiff's cognitive dysfunction. However, successful management of one does not erase the relevance of the other, and from a review of the record it is

---

[108] R. at 1519, 1526–28.

[109] *Id.*

[110] Docket No. 10, at 15.

[111] *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) (quoting 20 C.F.R. § 416.927(d)(2)(i), (ii)).

[112] *Webb v. Comm'r, SSA*, 750 F. App'x 718, 721 (10th Cir. 2018).

clear that multiple providers have expressed that management of Plaintiff's schizoaffective disorder has come at the cost of his cognitive function, and have noted his decreased ability to work and function as a result of those effects. With that said, the Court now addresses the ALJ's treatment of two of the 2017 forms, concluding that because the ALJ erred in the treatment of these medical opinions, the case must be remanded for further consideration.

As to the Medicaid form and Form II, the ALJ's conclusions were in error and are not supported by substantial evidence.[113] As noted, the ALJ stressed that Dr. Welsh is not a "psychiatrist, psychologist, or a mental health specialist," and, referencing the record that she had "thoroughly discussed above," and would "be continued to be discussed below,"[114] concluded that Dr. Welsh's treatment notes did not support and were inconsistent with his opinions as expressed in the forms.[115] The ALJ relied on the fact that in his treatment notes Dr. Welsh had "consistently indicated that the claimant's schizoaffective disorder was adequately to well controlled with medications, and that the claimant has often reported little to no complaints."[116] The ALJ's discussion of relevant factors ended there.

While an "ALJ need not 'expressly' consider each factor, . . . the record must reflect that the ALJ considered every relevant factor to determine the weight to be afforded the medical

---

[113] As to Form I, the Court does not address the sufficiency of the ALJ's consideration because that may change on remand and because Form I is primarily intended to address physical limitations, which limitations are not necessarily at issue here.

[114] R. at 1526.

[115] *Id.*

[116] *Id.*

opinion evidence,"[117] and the ALJ's reliance solely on Dr. Welsh not being a specialist and the alleged inconsistency between his notes and his opinion "at least raises a question about whether she considered the other regulatory factors."[118] And as to the factors the ALJ did consider, her analysis is lacking.

First, the ALJ discounts Dr. Welsh's opinions as to Plaintiff's mental functioning because Dr. Welsh was not a specialist in the field. While Dr. Welsh was self-admittedly not a specialist, this does not mean that his observations of Plaintiff as to his mental functioning should be disregarded wholesale without more explanation. And the ALJ failed to articulate a reason why Dr. Welsh's opinion as to Plaintiff's ability to function should be discounted because he was not a specialist. "Indeed, the Commissioner's policy states that 'all licensed physicians' are 'acceptable medical sources' for giving opinions on a claimant's impairments and his . . . ability to function."[119] Likewise, the Tenth Circuit has explained that "a psychological opinion may rest either on observed signs and symptoms or on psychological tests."[120]

Furthermore, the length of Dr. Welsh's treating relationship is relevant to the analysis. Dr. Welsh had observed and recorded Plaintiff's cognitive symptoms for over three years at the time he completed the 2017 forms. And prior to Dr. Welsh's 2014 letter, Plaintiff had at least five or more interactions with Dr. Welsh's clinic as Dr. Welsh had been treating Plaintiff as a primary

---

[117] *Cayla D. ex rel. K.D.J. v. Saul*, No. 18-CV-00104-GKF-JFJ, 2019 WL 5847881, at *2 (N.D. Okla. Sept. 5, 2019) (citing *Racette v. Berryhill*, 734 F. App'x 592, 599–600 (10th Cir. 2018)).

[118] *Racette*, 734 F. A'ppx at 599.

[119] *Barber v. Comm'r SSA*, No. 18-cv-01189-MSK, 2019 WL 3759487, at *5 (D. Colo. Aug. 9, 2019) (citing SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)).

[120] *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

care physician for just over a year at that point. Dr. Welsh's observations were such that he continued to prescribe Plaintiff the medications that stabilized his schizoaffective disorder. It is unclear to the Court whether ALJ took this length of the treatment relationship into account, and she certainly did not point to or discuss any contradicting reports from providers who had seen Plaintiff for a similarly extended time.

Additionally, the ALJ's general reference to the records "discussed above" and "below" is insufficiently specific to make it clear to the Court what in the record was so inconsistent with Dr. Welsh's opinion here as to render it worth "little weight." Conversely, the general reference directs the Court to no evidence upon which the ALJ relied, even if slightly, to have afforded the opinion little weight instead of no weight at all. This lack of specific references to records is problematic, especially because the record does not indicate obvious inconsistencies with Dr. Welsh's opinions and treatment notes or other evidence in the record relating to Plaintiff's condition. In other words, a review of the record shows that even with the schizoaffective disorder stabilized, Plaintiff still often reported and was observed to have slowed cognitive functioning, and not just by Dr. Welsh. Because the ALJ has failed to point to and discuss these "purported inconsistencies" between Dr. Welsh's opinions and the record, the case must be remanded for further consideration and explanation—with citations to the record—supporting the weight the ALJ assigns to Dr. Welsh's

opinion.[121] Finally, "because [Dr. Welsh's] opinion is more limiting than the ALJ's RFC" the Court concludes that the ALJ's "insufficient opinion analysis is a harmful legal error."[122]

As such, the Court will not consider the contentions as to the ALJ's remaining conclusions regarding the other medical opinions from Dr. Welsh because those may change on remand,[123] other than to note that in considering these medical opinions, it is incumbent upon the ALJ to abide by regulatory standards to provide specific and legitimate reasons, considering all of the regulatory factors, supported by substantial evidence, for any decision to discount the medical opinions from Plaintiff's treating providers.

C. DR. OTTESEN

As noted, Dr. Ottesen conducted a psychological evaluation[124] and completed a Psychiatric Review Technique and Medical Residual Functional Capacity Form.[125] The ALJ gave "little to no weight" to the opinions contained in Dr. Ottesen's completed forms.[126] The ALJ concluded that Dr. Ottesen's opinions were "completely based on a single evaluation" and "they appeared based solely on claimant's own self-reports and interview with claimant's mother."[127] The ALJ further

---

[121] *See Praytor v. Comm'r of SSA*, 750 F. App'x 723, 728 (10th Cir. 2018) (remanding because the ALJ's "failure to explain the purported inconsistencies" rendered the ALJ's reasons for rejecting a medical opinion insufficiently specific to enable the court "to meaningfully review [the ALJ's findings]").

[122] *Quintana v. Saul*, No. 19-1080 KK, 2020 WL 5764310, at *11 (D.N.M. Sept. 28, 2020).

[123] *Watkins*, 350 F.3d at 1299 (stating that the court "will not reach the remaining issues raised by [Plaintiff] because they may be affected by the ALJ's treatment of this case on remand").

[124] R. at 832–37.

[125] *Id.* at 839–55.

[126] *Id.* at 1535.

[127] *Id.*

noted Dr. Ottesen's observation that Plaintiff's level of responsiveness showed side effects from the medication because Plaintiff's responses were slow, but that this was expected because of the nature of the medication Plaintiff was taking.[128]

Because the case must be remanded, the Court will again refrain from considering the arguments as to the ALJ's treatment of this opinion, but notes for the ALJ that the Tenth Circuit has "held that a limited treatment relationship does not, *by itself,* form a proper basis for rejecting a medical-source opinion because 'otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings.'"[129] Furthermore, rejecting an opinion on the basis that the provider allegedly based their opinion in part on a plaintiff's subjective reporting "impermissibly put[s] the ALJ in the position of judging a medical professional on the assessment of medical data."[130]

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court reverses and remands the Commissioner's decision.

---

[128] *Id.*

[129] *Matlock v. Berryhill*, No. CV 16-1215 KK, 2018 WL 1305424, at *11 (D.N.M. Mar. 12, 2018) (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)).

[130] *Thomas v. Barnhart*, 147 F. App'x 755, 759–60 (10th Cir. 2005); *see also Jimenez v. Berryhill*, 300 F. Supp. 3d 1295, 1305 (D. Colo. 2018) (explaining that even though a plaintiff's "mental health providers often relied on his subjective reports of his symptoms," doing so was "no basis for discrediting the medical source opinions").

DATED this 26th day of October 2026.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge